HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BARBARA ROYBAL,

    Plaintiff,

  v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendants.

CASE NO. C14-1619RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court pursuant to 42 U.S.C. § 405(g) on review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff Barbara Roybal's ("Plaintiff") application for Supplemental Social Security Income disability benefits. The Court has considered the Parties' briefs and the Administrative Record ("AR"). As further explained in this Order, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** this Action.

## II. BACKGROUND

Plaintiff filed her application for supplemental security income on February 1, 2012 alleging a disability beginning on June 1, 2008. *See* AR 22. The ALJ held a hearing in February 2013. *Id.* Following the hearing, the ALJ denied the Plaintiff's application in a written decision issued March 15, 2013, finding that Plaintiff was not disabled under the Social Security Act. *Id.* at 40. Plaintiff requested review of the decision, but the Appeals Council denied review on September 2, 2014. *Id.* at 1-5.

ORDER – 1

In the written decision, the ALJ determined that the Plaintiff suffered from several severe impairments, specifically major depressive disorder, post traumatic stress disorder, and a learning disorder in mathematics. *Id.* at 24. Despite these impairments, the ALJ found that Plaintiff had the "residual functional capacity to perform a full range of work at all exertional levels. The claimant is able to understand, remember, and carry out simple, routine tasks on a regular and continuing basis throughout a normal workday and workweek." *Id.* at 27. Consequently, the ALJ found that Plaintiff could perform her past relevant work as a photo finishing lab worker. *Id.* at 35. The ALJ also found, by relying on the Medical-Vocational Guidelines (the "grids"), that there were other jobs that exist in significant numbers in the national economy that the Plaintiff could also perform. *See id.* at 36-39. Because the ALJ concluded that Plaintiff could perform her past work and that there were jobs that existed in significant numbers that Plaintiff could perform, the ALJ found that Plaintiff was not disabled. *Id.* at 39-40.

### III.   LEGAL STANDARD

In a case like this one, where the Court reviews the decision of an administrative law judge ("ALJ") to deny disability benefits, the Court must generally affirm the ALJ's decision where substantial evidence supports it. *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1222 (9th Cir. 2009) ("Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). In certain circumstances, such as when an ALJ rejects a claimant's testimony about the severity of her impairments, a higher standard applies. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (requiring "specific, cogent reasons" for rejecting claimant's testimony, and "clear and convincing evidence" where there is no evidence of malingering). Similarly, an ALJ can reject the uncontradicted opinions of a treating or examining medical provider only where clear and convincing evidence supports that decision. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Even where medical evidence contradicts the opinion of a treating or

ORDER – 2

examining provider, the "ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The Court does not defer to the ALJ's legal conclusions. *Bray*, 554 F.3d at 1222.

A five-step process determines whether an applicant is disabled. *See Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). The burden of proof is on the applicant in the first four steps, which are the prerequisites of a prima facie case of disability. *Treichler*, 775 F.3d at 1096 n.1. In the first step, the applicant must show that she did not engage in substantial gainful activity during a relevant time period. 20 C.F.R. § 404.1520(a)(4)(i). If she did, then she is not disabled. If she did not, then the claimant must show at the second step that she has a "severe medically determinable physical or mental impairment" or combination of impairments that are collectively severe. 20 C.F.R. § 404.1520(a)(4)(ii). The severe impairment must generally last at least a year. *Id.*; *see also* 20 C.F.R. § 416.909 (setting "duration requirement" for impairment). If an applicant shows a severe impairment of sufficient duration, she must show at the third step that over the course of at least a year, her impairment "meets or equals" an impairment listed in applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If it does, she is disabled. If not, the ALJ must determine, between step three and step four, the applicant's residual functional capacity ("RFC"), which is an assessment of the applicant's "ability to work after accounting for her verifiable impairments." *Bray*, 554 F.3d at 1222-23. The applicant must demonstrate at step four that her RFC is such that she cannot perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv) (noting that an applicant who can perform past relevant work is not disabled). If she cannot, then the burden shifts to the SSA to demonstrate that her RFC permits her to perform other jobs that exist in substantial numbers in the national economy. *See Bray*, 554 F.3d at 1223 (describing allocation of burdens in five-step process).

ORDER – 3

# IV. ANALYSIS

Plaintiff raises five issues to be reviewed by this Court. Specifically, Plaintiff asserts the following disputed issues:

1. Whether the ALJ erred in weighing the opinion evidence of David Knopes, Ph.D, Greg Thompson, LMHC, and Aliza Hauser, M.A. in making the RFC assessment;

2. Whether the ALJ's erred in finding that Plaintiff could perform her past relevant work as a photo finishing lab worker was proper;

3. Whether the ALJ erred in failing to consider Plaintiff's mathematics disorder in conducting his RFC assessment or in his finding that Plaintiff was not disabled at step five based on the framework of the grids;

4. Whether the ALJ's decision is supported by substantial evidence despite new evidence submitted to the Appeals Council; and

5. Whether the Court should remand for further proceedings or for payment of benefits.

*See* Dkt. # 12 at 1-2; Dkt. # 13 at 1.

Because these are the only asserted errors, these are the only issues this Court considers in this review. *See Carmickle v. Comm'r, Social Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (refusing to review ALJ's conclusion when plaintiff "failed to argue th[e] issue with any specificity in his briefing"); *Lewis v. Apfel*, 236 F.3d 503, 517 n. 13 (9th Cir. 2001) (limiting review to issues plaintiff raises).

  a. <u>Did the ALJ err in weighing the opinions evidence in performing the RFC assessment?</u>

Plaintiff takes issue with the ALJ's consideration of the medical opinions of examining psychologist David Knopes, Ph.D, treating counselor Greg Thompson, LMHC, and vocational consultant Aliza Hauser in performing the RFC assessment. *See* Dkt. # 12 at 7.

ORDER – 4

### i. David Knopes, Ph.D

Plaintiff requests that the Court find that the ALJ failed to give specific and legitimate reasons for rejecting Dr. Knopes' opinion that Plaintiff's mental health issues were a primary barrier to her ability to search, obtain, and maintain independent competitive employment. *See* Dkt. # 12 at 7-8. Dr. Knopes' opinion was contradicted by State Agency sources – specifically the opinions of State agency psychologists Jim Robinson Ph.D and Patricia Kraft Ph.D. *See* AR 31-32. "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan v. Comm'r of Social Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)).

Dr. Knopes examined Plaintiff in June 2011 because Plaintiff had requested for assistance from the Department of Vocational Rehabilitation to return to work. *See* AR 267-68. Dr. Knopes noted that Plaintiff's neuropsychological test data was generally within the average range. *Id.* at 287-88. Nevertheless, Dr. Knopes also concluded that Plaintiff's "mental health is identified as a primary barrier to her ability to search, obtain, and maintain independent competitive employment." *Id.* The ALJ gave little weight to Dr. Knopes' opinions. *See* AR at 33. In particular, the ALJ found that Dr. Knopes "gave no specific functional limitations in [his] assessment." *Id.* at 32-33. The ALJ found that Dr. Knopes' opinion that Plaintiff was unable to work was, at base, a disability conclusion and properly disregarded because "the final responsibility for deciding whether the claimant is 'disabled' or unable to work is reserved to the Commissioner." *Id.* at 33. The ALJ also found that Dr. Knopes "cited to no objective evidence to support a finding that the claimant could not perform even simple work." *Id.*

Plaintiff first argues that the ALJ erred because he failed to take into account Dr. Knopes' findings as to Plaintiff's symptoms as evaluated using the MMPI-IIRF and other tests. *See* Dkt. # 12 at 8. In his report, Dr. Knopes noted that Plaintiff's responding

ORDER – 5

pattern to the MMPI was consistent with her self-reported levels of depression. *See* AR at 295. According to Dr. Knopes, these mental health issues formed the primary bar to Plaintiff's ability to search for employment. *Id.* at 267-68.

The ALJ considered Dr. Knopes' tests, acknowledging that Dr. Knopes' "neuropsychological test results showed some deficits in concentration" and that Plaintiff had "some impairment in executive functioning and complex concentration." *See* AR at 33. However, the ALJ noted that Dr. Knopes' "mental status exam with the claimant showed intact ability to follow a three-step command" and other tests "showed average general intellectual ability and low-average ability to sustain attention, concentrate, and exert mental control." *Id.* These results all supported the ALJ's conclusion that Dr. Knopes did not provide objective support for his opinion that Plaintiff could not perform simple work. [1]

Plaintiff next argues that the ALJ improperly rejected Dr. Knopes' opinion on the basis that it was inconsistent with Plaintiff's report that she was independent in her daily activities, such as cooking, cleaning, grocery shopping, and caring for multiple children. *See* Dkt. # 12 at 10. Plaintiff argues that the ALJ did not explain how these activities were inconsistent with the motivation and social problems reported in Dr. Knopes' report – namely that Plaintiff lacked energy, was pessimistic, and was socially introverted and disengaged. *See id.* at 8-9. An ALJ is permitted to discount a doctor's opinion to the extent it conflicts with the claimant's daily activities. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). And the ALJ noted that the Plaintiff

---

[1] In further support of the ALJ's proper consideration of Dr. Knopes' opinions, the Court notes that the ALJ had previously found that Plaintiff's allegations of high levels of depression could be controlled effectively through medication based on treatment notes. *See id.* at 29-30, 344, 449-50; *see also Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). The fact that Plaintiff's symptoms attributable to her depression could be controlled effectively through medication would indicate that the ALJ properly accorded less weight to these tests, particularly as Dr. Knopes also specifically concluded that Plaintiff's a new "medication regimen" and continued psychotherapy work would "improve both perception and performance of [Plaintiff's] essentially normal neuropsychological profile." *See id.* at 297.

ORDER – 6

had "relatively intact social functioning" based on Plaintiff's own reports that she was able "to go grocery shopping and use public transportation," as well as treatment notes indicating that Plaintiff "watches over other residents' children in addition to her own, and has been coaching other young mothers regarding parenting skills." *See* AR at 26-27. There are few activities more physically exhausting than caring for children – and it would be a stretch to consider an individual socially disengaged or introverted if she taught other mothers how to care for their children. The ALJ's reasoning was sound.

Finally, ALJ was entitled to accord less weight to Dr. Knopes' for the lack of specificity of his opinions as compared to the State Agency sources. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (finding that only one doctor's "made specific findings that were useful in the disability determination"); *see also Miller v. Comm'r of Social Sec.*, No. 1:13-CV-1872, 2014 WL 3950912, at *15 (N.D. Ohio Aug. 12, 2014) ("the ALJ reasonably assigned 'less weight' to the opinion, because the doctor failed to define the term 'brief.' Given the lack of specificity, the ALJ reasonably gave "less weight" to such a suggestion, particularly because other medical opinions exist in the record that more precisely identify Plaintiff's ability to sit and stand, including those of the state agency physicians, which the ALJ credited.").

For these reasons, the Court finds that the ALJ gave specific and legitimate reasons for rejecting Dr. Knopes' opinion.

    *ii. Greg Thompson, LMHC*

Plaintiff next argues that the ALJ improperly rejected Mr. Thompson, Plaintiff's treating counselor's, opinions. *See* Dkt. # 12 at 11-14. Plaintiff argues that the ALJ did not give germane reasons for rejecting Mr. Thompson's testimony and opinions. *Id.*

The ALJ gave Mr. Thompson's testimony and other opinions little to no weight. *See* AR at 34-35. Mr. Thompson assessed Plaintiff with a number of moderate to marked cognitive and social limitations in his completed Department of Social and Health Services ("DSHS") mental assessments and in his testimony at the hearing. *See id.* at 34-

ORDER – 7

1
2
3
4
5
6
7
8
9
10
11
12
13

35. At the time of the hearing, Mr. Thompson had been counseling Plaintiff for about five years. *See* AR 69. He indicated that Plaintiff had come to his agency for help because she was feeling depressed and unmotivated. *Id.* at 70. Mr. Thompson provided DSHS mental assessments in February 2011 and April 2012. *See id.* at 34.

In Mr. Thompson's February 2011 assessment, Mr. Thompson gave Plaintiff a GAF score of 49, noted moderate to marked cognitive and social limitations, and concluded that it would be difficult for Plaintiff to work in a public setting. *See id.* at 34, 261-64. The ALJ rejected this opinion because Mr. Thompson gave no clinical findings to support the opinion and because it relied on situational factors not relevant to the assessment of functional capacity. *Id.* at 34. These were germane reasons for affording Mr. Thompson's opinion zero weight (*see Lawson v. Colvin,* No. C13-5049-JCC, 2013 WL 6095518, at *18 (W.D. Wash. Nov. 20, 2013)), particularly as the DSHS form itself instructed that clinical findings should be included (*see* AR at 263).

14
15
16
17
18
19
20
21
22
23
24
25
26

Mr. Thompson's April 2012 opinion was virtually identical to the February 2011 opinion though it included mental status examination findings (*compare* AR at 261-65 *with* AR 394-398), which the ALJ noted in his written decision (*see* AR at 34). The ALJ afforded this opinion no weight because Mr. Thompson "did not tie his exam findings to the specific functional limitations" and "again relied on factors not relevant to an assessment of function." *Id.* at 34. Mr. Thompson also noted that Plaintiff had not improved significantly with treatment (*see id.* at 397), which the ALJ found was contradicted by other evidence in the record (*see id.* at 34). These were germane reasons for rejecting this opinion. This is particularly true as Dr. Haney's treatment records – and other records – contradict the severe limitations assessed by Mr. Thompson (*see id.* at 29-30, 330, 333, 336, 342, 344, 347) and because the GAF score was inconsistent with Plaintiff's daily activities, including supervising children for others (*see id.* at 34, 406, 410, 413, 434, 437, 441-42, 445).

27
28

ORDER – 8

The ALJ also offered germane reasons for rejecting Mr. Thompson's hearing testimony by finding that it was inconsistent with the record. *See id.* at 34-35. Specifically, the ALJ found that Mr. Thompson's conclusions, including that Plaintiff "gets distracted easily and sometimes will freeze in response to authoritative responses," were "not consistent with the record." *See id.* at 35. The ALJ gave Mr. Thompson's testimony little weight because Mr. Thompson's own "therapy and case management notes indicate that the claimant is not only successfully caring for her own children but is also watching over other children in her housing community." *Id.* In fact, the ALJ noted that Mr. Thompson's notes showed, *inter alia*, that Plaintiff coached other parents in the community, children in the community came to Plaintiff for guidance, and that Mr. Thompson was helping Plaintiff advocate for her children and for others' children. *Id.* In particular, the ALJ referenced notes from May 2012 which indicate indicates that Plaintiff "has works [sic] generally out of a cognitive framework of negative self-talk" and October 2012 which indicates that Plaintiff has been helped to "look at her worth as a mother" through effective parenting. *Id.*; *see also id.* at 413, 445. These were specific and germane reasons for rejecting Mr. Thompson's testimony regarding Plaintiff's response to authoritative responses.

### iii. Aliza Hauser, M.A., CRS

Finally, Plaintiff argues that the ALJ failed to give germane reasons for rejecting the opinions of Ms. Hauser. *See* Dkt. # 12 at 14-15. Ms. Hauser conducted a Comprehensive Vocational Evaluation in December 2011. *See* AR at 388. In this evaluation, Ms. Hauser reported, amongst other things, that tests indicated that Plaintiff "scored in the probable range for avoidant, depressive and dependent personality traits," which may present some occupational issues. *See id.* at 390. Nevertheless, Ms. Hauser's evaluation did not give a concrete description of Plaintiff's functional capacity. *See generally id.* at 391-93. Ms. Hauser's report does not indicate that Plaintiff's limitations would affect Plaintiff's ability to work; rather, the summary notes that Plaintiff's barriers

ORDER – 9

to work included needing vocational training, help with transportation, and with time management and organization. *Id.* The summary also indicates that Plaintiff needed to develop a plan to treat physical and mental issues. *Id.* at 392.

The ALJ rejected Ms. Hauser's evaluation in part because "it does not give a specific assessment of functional capacity." *Id.* at 33. As noted above, the lack of specificity was a specific reason for rejecting an opinion. *See Meanel*, 172 F.3d at 1113. Additionally, the ALJ noted that the evaluation was "based in part on situational factors not relevant to an assessment of the claimant's residual functional capacity . . . such as the claimant's preference for working close to home and her difficulty traveling by bus with her children." *Id.* at 33-34. These were legitimate reasons for rejecting Ms. Hauser's evaluation. *See e.g., Cole v. Colvin*, No. 1:12-CV-08597 ALC, 2014 WL 1224568, at *4 (S.D.N.Y. Mar. 24, 2014) (childcare concerns irrelevant to RFC determination); *Roach v. Colvin,* No. 5:12-CV-992 GLS/ATB, 2013 WL 5464748, at *11 (N.D.N.Y. Sept. 30, 2013) (transportation issues irrelevant to RFC determination). The Court therefore finds that the ALJ gave germane reasons[2] for rejecting Ms. Hauser's evaluation.

  b. <u>Did the ALJ err in finding that Plaintiff could perform her past relevant work as a photo lab finisher?</u>

Plaintiff argues that the ALJ erred by finding that she could perform her past relevant work as a photo finishing lab worker. *See* Dkt. # 12 at 3. Plaintiff argues that the ALJ's finding that she is limited to "simple, routine tasks" is inconsistent with a finding that she can work as a photo finishing lab worker because it is a semi-skilled job with a Specific Vocational Preparation ("SVP") score of three. *Id.*

---

[2] The ALJ also alluded to another germane reason for rejecting Ms. Hauser's report, noting that "[m]otivation looms large in this case" in response to the practical barriers cited as limits on Plaintiff's ability to work. AR at 34 n.11. Motivation and the issue of secondary gain is a relevant in assessing the credibility of the Plaintiff's allegations of disability. *See Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1998) ("well documented motivation to obtain social security benefits" was a specific finding supporting credibility determination).

ORDER – 10

The SVP level in a Dictionary of Occupational Titles ("DOT") listing "does not address whether a job entails only simple, repetitive tasks." *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005). Instead, "[a] job's SVP is focused on 'the amount of lapsed time' it takes for a typical worker to learn the job's duties." *Id.* A "job's reasoning level" better "gauges the minimal ability a worker needs to complete the job's tasks themselves." *Id.* Here, the DOT lists a photofinishing lab worker as requiring only a reasoning level of 2. *See* DOT 976.687-018. And numerous courts have held that an ALJ's finding that an individual is "able to perform simple, repetitive instructions indicates a level of reasoning above" level 1. *Meissl*, 403 F. Supp. 2d at 984 (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005)). That is in line with the ALJ's findings here, as the ALJ exhaustively explained. *See* AR at 36-39 (noting that "a limitation to simple repetitive work falls within the ambit of the DOT's reasoning levels one and two").

Additionally supporting the ALJ's conclusion is the fact that he found that Plaintiff had a high school education. *See* AR at 36, 48, 184. The regulations provide that an individual who has a high school education or above is generally considered to be able to "do semi-skilled through skilled work." 20 C.F.R. § 416.964(b)(4). Even though the DOT lists photofinishing lab worker jobs as having an SVP score of three, indicating that it is a semi-skilled job (*see Policy Interpretation Ruling : Titles II & Xvi: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions*, SSR 00-4P (S.S.A. Dec. 4, 2000)), Plaintiff's education level suggests that she would still have been able to perform her past relevant work. Accordingly, this Court finds that the ALJ's conclusion was supported by substantial evidence.

    c. <u>Was the ALJ's decision supported by substantial evidence despite the new evidence submitted to the Appeals Council?</u>

After the ALJ's decision, Plaintiff was examined by Victoria McDuffee, Ph.D on March 21, 2013. *See* AR at 451-461. Dr. McDuffee administered several tests;

ORDER – 11

Plaintiff's responses were consistent with the outcomes of the inventories administered by Dr. Knopes and Ms. Hauser. *See id.* at 274-75, 281, 451-461. Dr. McDuffee's opinion was submitted to the Appeals Council, which considered it and made it part of the record. *See id.* at 1, 4. Nevertheless, the Appeals Council did not find that this opinion provided a basis for changing the ALJ's decision. *See id.* at 1.

Ordinarily, the Appeals Council will grant review if it finds that the ALJ's decision is contrary to the weight of the record when the new and material evidence is considered. *See Warner v. Astrue*, 859 F. Supp. 2d 1107, 1113 (W.D. Wash. 2012). Where new evidence is submitted to the Appeals Council, which considers the evidence but nevertheless denies review, the reviewing court must still review that evidence. *See Brewes v. Comm'r of Social Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012). In this situation, the reviewing court asks whether the ALJ's decision is supported by substantial evidence after taking into account the new evidence. *See Springer v. Colvin*, 31 F. Supp. 3d 1246, 1261 (E.D. Wash. 2014). If the new evidence creates a reasonable possibility that it would change the outcome of the ALJ's decision, then remand is appropriate to allow the ALJ to consider the evidence. *See Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001).

Plaintiff argues that because Dr. McDuffee's opinions are largely consistent with those of Dr. Knopes, Ms. Hauser, and Mr. Thompson, the ALJ's decision is no longer supported by substantial evidence. *See* Dkt. # 12 at 15-17. The Court disagrees. The ALJ rejected the conclusions of Dr. Knopes, Mr. Thompson, and Ms. Hauser in large part because their opinions were at odds with Plaintiff's reports of daily activities. *See* AR at 33-35. Dr. McDuffee's conclusions are therefore cumulative would not have changed the outcome of the ALJ's decision, meaning that the ALJ's decision remains supported by substantial evidence. *See Underwood v. Colvin*, No. 6:14-CV-00934-AA, 2015 WL 5521991, at *5 (D. Or. Sept. 10, 2015).

ORDER – 12

d.  Did the ALJ err in failing to consider Plaintiff's mathematics disorder in his RFC assessment or in his determination that Plaintiff was not disabled based on the framework of the grids?

Plaintiff next argues that the ALJ erred in failing to incorporate any difficulty with mathematics into his RFC assessment. Dkt. # 12 at 4. In conjunction, Plaintiff argues that the ALJ erred in failing to consider her mathematics disorder in determining that she was not disabled based on Medical-Vocational Rule 204.00. *See id.*

The ALJ found that Plaintiff's mathematics disorder is a severe impairment. *See* AR at 24-25. Plaintiff's mathematics ability has been tested several times, with her scoring in the 14th percentile in arithmetic testing in October 2000 (*see id.* at 255) and being assessed by Dr. Knopes to be at the fifth grade, second month level in November 2011 (*see id.* at 274).

Although Plaintiff appears to argue otherwise, the ALJ did thoroughly consider Plaintiff's mathematics disorder in his RFC assessment. *See* AR at 27-31. The ALJ specifically found that Plaintiff's daily activities were inconsistent with her allegations of disabling limitations, including with respect to her allegations of a mathematics disorder. *See id.* at 31. The ALJ found that in Plaintiff's "function report, she indicated that she is able to pay bills and use a checkbook, in spite of her difficulties with mathematics." *Id.* at 31, 203. Consequently, he found that these reports supported discrediting Plaintiff's testimony of disabling limitations. *See id.* at 31 n.6.

Additionally, the diagnosis of a particular impairment does not presumptively demonstrate any related limitation in a disability analysis. *See Young v. Sullivan*, 911 F.2d 180, 183-84 (9th Cir. 1990). Plaintiff suggests that the ALJ's finding of a mathematics disorder requires that the ALJ specifically include a mathematics limitation in her RFC (*see* Dkt. # 14 at 3), but the cases are not uniform, and numerous courts have upheld RFCs without mathematics limitations even when ALJs have found a severe impairment in the form of a mathematics disorder (*see e.g., Epperson v. Comm'r of Social Sec. Admin.*, No. 4:10-CV-00540, 2013 WL 1222308, at *2 (E.D. Tex. Mar. 25,

ORDER – 13

2013); *Munoz v. Astrue*, No. CIV.A.6:08-CV-071-C, 2010 WL 935452, at *3 (N.D. Tex. Feb. 22, 2010); *Seamans v. Astrue*, No. CIV. 10-6017, 2011 WL 1343333, at *1 (W.D. Ark. Apr. 8, 2011)). This makes sense, as there is "no authority to support the proposition that a severe mental limitation must correspond to limitations on a claimant's ability to perform basic work activities." *Bray*, 554 F.3d at 1228-29. As such, the ALJ did not err in not incorporating a mathematics limitation into Plaintiff's RFC.

Finally, Plaintiff argues that the ALJ erred by relying solely on the grids because he determined that Plaintiff's RFC included the non-exertional limitation to "simple, routine tasks on a regular and continuing basis." *See* Dkt. # 12 at 5-7.

If an individual cannot perform her past relevant work, then the ALJ has the burden of producing evidence that there are other jobs in significant numbers in the national economy that she can perform.[3] *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). An ALJ may rely upon the grids to meet his burden at step five where the grids "accurately and completely describe the claimant's abilities and limitations." *Id.* at 1102 (quoting *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)); 20 C.F.R. 404, Subpt. P. App. 2, § 200.00(a). "[T]he fact that a nonexertional limitation is alleged does not automatically preclude application of the grids. The ALJ should first determine if a claimant's nonexertional limitations significantly limit the range of work permitted by his exertional limitations." *Tackett*, 180 F.3d at 1102; *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988). "[A]n ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at a sufficient level of severity such as to make the grids inapplicable to the particular case." *Hoopai v. Astrue,* 499 F.3d 1071, 1076 (9th Cir. 2007).

The dispositive issue here "is the severity of the nonexertional impairment at step five." *Hansen v. Astrue*, No. C07-1198 CRD, 2008 WL 2705594, at *4 (W.D. Wash.

---

[3] The Court notes that the ALJ explicitly found that the Plaintiff *could* perform her past relevant work. *See* AR at 36.

ORDER – 14

1  July 7, 2008). Plaintiff's cited case, *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001) does not compel a finding that a limitation to "simple repetitive tasks significant limitation." *Hansen v. Astrue*, 2008 WL 2705594 at *4. Instead, in *Holohan*, the court remanded for payment of benefits for, among other reasons, the ALJ's failure to base his rejection of the plaintiff's treating physician's opinion on substantial evidence and found that the plaintiff's severe psychological limitations required vocational expert testimony. *Holohan*, 246 F.3d at 1207-09. As such, other courts in this district have found that an ALJ need not necessarily call a vocational expert when he finds that the plaintiff has a non-exertional limitation to "simple repetitive work." *See Hansen v. Astrue*, 2008 WL 2705594, at *3-5 (holding that substantial evidence supported the ALJ's conclusion that the plaintiff's non-exertional limitations were not sufficiently severe that they significantly affected his ability to work).

Here, substantial evidence supports the ALJ's finding that Plaintiff's non-exertional limitations were not sufficiently severe as to significantly affect her capacity to perform unskilled work. *See* AR at 39. As the ALJ exhaustively explained, Plaintiff's allegations were, to a degree, contradicted by the clinical findings (*id.* at 29), evidence that Plaintiff had not been fully complying with her treatment (*see id.* at 29-30), treatment notes showing that Plaintiff was a good parent and "exceptional support" for others in her housing community (*id.* at 30), and by her daily activities (*id.* at 31). This Court finds that the ALJ's findings were supported by substantial evidence and that there is nothing in the record that suggests that vocational expert testimony would have changed the ALJ's decision. As such, the Court finds no error at this step of the ALJ's decision.

///
///
///

ORDER – 15

## V. CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's decision was supported by substantial evidence and free of legal error. The Court therefore **AFFIRMS** the final decision of the Commissioner denying Plaintiff's application for supplemental disability benefits and **DISMISSES** this action. The Clerk shall enter judgment for the Defendant.

DATED this 2nd day of October, 2015.

*Richard A. Jones*
_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 16